# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

SAMANTHA STINSON & JONATHAN STINSON, on behalf of themselves & their minor children, A.R.S. & A.W.S., *et al.*,
*Plaintiffs-Appellees*,

JULEE JAEGER, on behalf of herself & her minor child, U.J., *et al.*,
*Plaintiffs-Appellees*,

v.

FAYETTEVILLE SCHOOL DISTRICT NO. 1, *et al.*,
*Defendants*,

CONWAY SCHOOL DISTRICT NO. 1,
*Defendant*,

STATE OF ARKANSAS
*Intervenor-Appellant.*

_____

On Appeal from the United States District Court
for the Western District of Arkansas
No. 5:25-cv-05127 (Hon. Timothy L. Brooks)

_____

## BRIEF OF KENTUCKY AND 16 OTHER STATES AS
## AMICI CURIAE SUPPORTING INTERVENOR-APPELLANT AND REVERSAL

| | |
|---|---|
| Matthew F. Kuhn | Office of the Kentucky |
| *Solicitor General* | Attorney General |
| John H. Heyburn | 1024 Capital Center Drive, Suite 200 |
| *Principal Deputy Solicitor General* | Frankfort, Kentucky 40601 |
| Caleb B. Childers | (502) 696-5300 |
| *Assistant Solicitor General* | Matt.Kuhn@ky.gov |

*Counsel for Amici States*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

INTERESTS OF AMICI CURIAE .......................................................................................1

ARGUMENT .........................................................................................................................3

   I. Arkansas's law can be applied differently than the situation considered in *Stone*. ..............3

   II. While *Lemon* was good law, *Stone* became an outlier.............................................................8

   III. Now that *Lemon* has been abrogated, *Stone* should not be applied here. .......................15

CONCLUSION ...................................................................................................................18

ADDITIONAL COUNSEL ................................................................................................20

CERTIFICATE OF COMPLIANCE .................................................................................22

CERTIFICATE OF SERVICE ...........................................................................................23

Appellate Case: 25-2713    Page: 2    Date Filed: 01/20/2026 Entry ID: 5598742

# TABLE OF AUTHORITIES

**Cases**

*ACLU Neb. Found. v. City of Plattsmouth,*
    419 F.3d 772 (8th Cir. 2005) (en banc).................................................. 13, 15

*Am. Civil Liberties Union of Ky. v. Mercer Cnty.,*
    432 F.3d 624 (6th Cir. 2005) ............................................................ 10, 12

*Am. Legion v. Am. Humanist Ass'n,*
    588 U.S. 29 (2019) ................................................................................*passim*

*City of Grants Pass v. Johnson,*
    603 U.S. 520 (2024) ...................................................................................17

*Edwards v. Aguillard,*
    482 U.S. 578 (1987) ...................................................................................10

*Firewalker-Fields v. Lee,*
    58 F.4th 104 (4th Cir. 2023) .....................................................................18

*Groff v. DeJoy,*
    600 U.S. 447 (2023) ......................................................................... 1, 15, 17

*Kennedy v. Bremerton Sch. Dist.,*
    597 U.S. 507 (2022) ..............................................................................*passim*

*Lemon v. Kurtzman,*
    403 U.S. 602 (1971) .....................................................................................1

*Lynch v. Donnelly,*
    465 U.S. 668 (1984) .....................................................................................9

*Marsh v. Chambers,*
    463 U.S. 783 (1983) .....................................................................................8

*McCreary Cnty. v. Am. Civ. Liberties Union of Ky.,*
    545 U.S. 844 (2005) .......................................................................10, 13, 16

*Moody v. NetChoice,*
    603 U.S. 707 (2024) .....................................................................................8

*New Doe Child #1 v. United States,*
    901 F.3d 1015 (8th Cir. 2018) ........................................................14, 15, 17

*Red River Freethinkers v. City of Fargo,*
    764 F.3d 948 (8th Cir. 2014) ..............................................................14, 15

Appellate Case: 25-2713     Page: 3     Date Filed: 01/20/2026 Entry ID: 5598742

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
　490 U.S. 477 (1989) ...................................................................................16

*Shurtleff v. City of Boston*,
　596 U.S. 243 (2022) ...................................................................................1, 3

*Stinson v. Fayetteville Sch. Dist. No. 1*,
　798 F. Supp. 3d 931 (W.D. Ark. 2025)...................................................... 3, 16

*Stone v. Graham*,
　449 U.S. 39 (1980) (per curiam)..............................................................*passim*

*Stone v. Graham*,
　599 S.W.2d 157 (Ky. 1980)...........................................................................4

*Town of Greece v. Galloway*,
　572 U.S. 565 (2014) ................................................................................ 14, 18

*United States v. Salerno*,
　481 U.S. 739 (1987)..................................................................................7, 8

*Van Orden v. Perry*,
　545 U.S. 677 (2005) ................................................................................*passim*

**Statutes**

Ark. Code Ann. § 1-4-133...............................................................................6

Ky. Rev. Stat. § 158.178.................................................................................4

**Other Authorities**

Gillian E. Metzger, *Facial Challenges and Federalism*,
　105 Colum. L. Rev. 873 (2005) ......................................................................7

*In re Honorable Edward L. Fossett*,
　OAG 78-605, 1978 WL 26724 (Aug. 28, 1978) ...............................................4

**Rules**

Fed. R. App. P. 29 .........................................................................................1

# INTERESTS OF AMICI CURIAE[1]

The Commonwealth of Kentucky and the 16 undersigned States have a profound interest in the proper interpretation of the Establishment Clause of the First Amendment. For decades, that provision was distorted by the Supreme Court's three-part test from *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971). That test "ambitiously attempted to find a grand unified theory of the Establishment Clause." *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 60 (2019) (plurality op.). Yet too often, *Lemon* led to "results more hostile to religion than anything a careful inquiry into the original understanding of the Constitution could contain." *See Shurtleff v. City of Boston*, 596 U.S. 243, 284 (2022) (Gorsuch, J., concurring in the judgment). Not only was *Lemon* "ahistorical," its test "invited chaos in lower courts, led to differing results in materially identical cases, and created a minefield for legislators." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 534, 537 (2022) (cleaned up) (citation omitted). With good reason, *Lemon*'s methodology for interpreting the Establishment Clause has been "abrogated." *Groff v. DeJoy*, 600 U.S. 447, 460 & n.7 (2023).

These appeals concern how to treat a Supreme Court decision that applied *Lemon*'s now-discarded test. That dated decision, which amicus curiae Kentucky remembers all too well, is *Stone v. Graham*, 449 U.S. 39 (1980) (per curiam). There, the Supreme Court tersely concluded that a Kentucky statute requiring the posting of the

---

[1] The amici States file this brief without consent of the parties or leave of the Court. *See* Fed. R. App. P. 29(a)(2).

Appellate Case: 25-2713      Page: 5      Date Filed: 01/20/2026 Entry ID: 5598742

Ten Commandments in public-school classrooms violates the Establishment Clause. *Id.* at 40–43. There is no dispute that *Stone* turned on *Lemon*. As *Stone* put it, "[w]e conclude that [Kentucky's law] violates the first part of the *Lemon v. Kurtzman* test, and thus the Establishment Clause of the Constitution." *Id.* at 42–43.

The amici States write to explain why *Stone* does not support a preliminary injunction as to Arkansas's law. Even before *Lemon* was overruled, the Supreme Court had narrowed *Stone* so that it stood for only a sliver of a proposition. Now that *Lemon* has been abrogated, the Court should not extend *Stone*'s reasoning to Arkansas's law, which can be applied in ways that differ from the situation considered in *Stone*. When the Supreme Court overruled *Lemon*, it discarded that case's methodology for interpreting the Establishment Clause. In *Lemon*'s place, the Supreme Court "instructed that the Establishment Clause must be interpreted by 'reference to historical practices and understandings.'" *Kennedy*, 597 U.S. at 535 (citation omitted). That approach—not *Stone*—is the proper way to judge the constitutionality of Arkansas's law.

That approach must account for the reality that "acknowledgements [on public property] of the role played by the Ten Commandments in our Nation's heritage are common throughout America." *Van Orden v. Perry*, 545 U.S. 677, 688 (2005) (plurality op.). More to the point, the Ten Commandments "have historical significance as one of the foundations of our legal system, and for largely that reason, they are depicted in the marble frieze in [the Supreme Court's] courtroom and other prominent public buildings in our Nation's capital." *Am. Legion*, 588 U.S. at 53. To be sure, the Decalogue

2

has religious significance for many Americans. But a "close look" at our Nation's history reveals that "[n]o one at the time of the founding [was] recorded as arguing that the use of religious symbols in public contexts was a form of religious establishment." *Shurtleff*, 596 U.S. at 287 (Gorsuch, J., concurring in the judgment).

## ARGUMENT

Arkansas offers several persuasive reasons why the preliminary injunctions issued below should be reversed. The amici States focus on the district court's conclusion that "[t]his case begins and ends with *Stone*." *Stinson v. Fayetteville Sch. Dist. No. 1*, 798 F. Supp. 3d 931, 948 (W.D. Ark. 2025). The amici States make three points about *Stone*. First, they explain that Arkansas's law can be applied in ways that differ from the situation considered in *Stone*. Second, they summarize how the Supreme Court cabined *Stone*'s scope even before *Lemon* was overturned. And third, they urge the Court not to extend *Stone*'s narrowed holding to this case but instead to apply the standard mandated by *Kennedy*.

## I. Arkansas's law can be applied differently than the situation considered in *Stone*.

*Stone* arose in the Bluegrass State. In 1978, a Democratic legislator from Louisville introduced, and the Kentucky General Assembly passed, the statute that prompted the case. That law, which remains on the books, instructs a Kentucky state official "to ensure that a durable, permanent copy of the Ten Commandments [is] displayed on a wall in each public elementary and secondary school classroom in the

3

Commonwealth." Ky. Rev. Stat. § 158.178(1). The law also directs that each display contain the following text in "small print below the last commandment": "The secular application of the Ten Commandments is clearly seen in its adoption as the fundamental legal code of Western Civilization and the Common Law of the United States." Ky. Rev. Stat. § 158.178(2).

Shortly after the law's passage, Kentucky's Attorney General issued a legal opinion allowing private parties to donate Ten Commandments displays to public schools. *In re Honorable Edward L. Fossett*, OAG 78-605, 1978 WL 26724, at *2 (Aug. 28, 1978). By the time *Stone* made it to Kentucky's high court, a private foundation had reportedly "financed 15,000 framed copies [of the Ten Commandments] which ha[d] been placed in all classrooms in 55 counties and in some classrooms in 48 other counties." *Stone v. Graham*, 599 S.W.2d 157, 159 (Ky. 1980) (Lukowsky, J., for reversal). Kentucky's courts upheld the Ten Commandments law. After a state trial court found the law constitutional, the Supreme Court of Kentucky affirmed by an equally divided vote. 599 S.W.2d at 157 (per curiam). (The vote was equally divided because a Justice recused due to his previous role as the Kentucky Attorney General who issued the above-described legal opinion.)

4

The U.S. Supreme Court summarily reversed in a 5–4 per curiam opinion.[2] From beginning to end, the Court applied *Lemon*—in particular, its first prong. *Stone*, 449 U.S. at 40–43. *Stone* can be read no other way. As the Court summarized at the top of its decision: "We conclude that Kentucky's statute requiring the posting of the Ten Commandments in public schoolrooms had no secular purpose, and is therefore unconstitutional." *Id.* at 41. So *Stone* was all about—and only about—*Lemon*.

In applying *Lemon*, *Stone* rejected Kentucky's "'avowed' secular purpose," expressed through the statutorily required statement at the bottom of each Ten Commandments display. *Id.* The Court summarily declared that "[t]he pre-eminent purpose for posting the Ten Commandments on schoolroom walls is plainly religious in nature."[3] *Id.* The Court, however, qualified that it was not holding that the Ten Commandments can never be displayed or discussed in public schools. It emphasized that "[t]his is not a case in which the Ten Commandments are integrated into the school curriculum, where the Bible may constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion, or the like." *Id.* at 42. At the end of its decision, the Court returned to *Lemon*, reiterating that Kentucky's law "violates the first

---

[2] Two of the dissenters would have granted certiorari and given the case plenary consideration. *Stone*, 449 U.S. at 43 (Burger, C.J., Blackmun, J., dissenting).

[3] In dissent, then-Justice Rehnquist pointed out that the Court's declaration about Kentucky's alleged purpose has "no support beyond [the Court's] own *ipsie dixit*." *Stone*, 449 U.S. at 43 (Rehnquist, J., dissenting).

Appellate Case: 25-2713     Page: 9     Date Filed: 01/20/2026 Entry ID: 5598742

part of the *Lemon v. Kurtzman* test, and thus the Establishment Clause of the Constitution." *Id.* at 42–43.

It is unmistakable from *Stone* that the Court considered only a standalone display of the Ten Commandments along with a short explanatory statement. As a result, *Stone* did not consider a Ten Commandments display that was situated alongside other historical documents. If anything, *Stone* conveys that such a display would comport with the Establishment Clause, given its allowance of public schools using the Ten Commandments "in an appropriate study of history, civilization, ethics, comparative religion, or the like." *See id.* at 42. So taking *Stone* at its word, a standalone Ten Commandments display stands on different constitutional footing than a display situated alongside other historical documents.

Arkansas's law can be applied in ways that differ from the standalone Ten Commandments display considered in *Stone*. Although Arkansas's law requires a Ten Commandments display in each classroom and library of an elementary or secondary school, Ark. Code Ann. § 1-4-133(a)(1)(B)(i) & (a)(2)(A), nothing in the statute prohibits a public school from displaying the Ten Commandments as part of a larger display of historical or legal documents. Indeed, Arkansas's brief (at 54–55) confirms that its law can be applied in exactly this way. So nothing in Arkansas's law prohibits a public school from displaying the Ten Commandments alongside other displays featuring documents formative to modern law, like Blackstone's *Commentaries* or the Supreme Court's decision in *Marbury v. Madison*. In addition, although Arkansas's law

6

does not require that a short statement be included with each display like the law in *Stone*, nothing prevents a public school from including a more robust context statement explaining the historical and legal importance of the Ten Commandments. Any of these hypothetical displays allowed under Arkansas's law would implicate *Stone*'s carve-out permitting the Ten Commandments to be used in public schools "in an appropriate study of history, civilization, comparative religion, or the like." 449 U.S. at 42.

The challengers to Arkansas's law might respond that, textually speaking, the Kentucky law considered in *Stone* likewise allowed these diverse displays. But that is beside the point. *Stone* did not consider those potential applications of Kentucky's law. That is likely because *Stone* arose before the Supreme Court's seminal decision setting a firm line between facial and as-applied challenges. *United States v. Salerno*, 481 U.S. 739, 746 (1987) (holding that a facial challenge requires "no set of circumstances under which the Act would be valid"). Through modern eyes, *Stone* is best understood as resolving only an as-applied challenge to Kentucky's law—specifically, to a standalone Ten Commandments display. *See* Gillian E. Metzger, *Facial Challenges and Federalism*, 105 Colum. L. Rev. 873, 882 (2005) ("[U]ntil *Salerno* uprooted the traditional orthodoxy, facial challenges were understood to include such context-specific challenges to general rules because as-applied challenges were defined in fairly narrow terms synonymous with claims of privilege.").

Understood this way, *Stone* at most could support an as-applied challenge to Arkansas's law. The challengers' burden in this facial challenge is to show that every

7

way that an Arkansas public school might comply with the Ten Commandments law violates the Establishment Clause. *See Salerno*, 481 U.S. at 746. Put differently, the challengers' decision to bring a facial challenge to Arkansas's law "comes at a cost." *See Moody v. NetChoice*, 603 U.S. 707, 723 (2024). That cost is that *Stone* cannot be dispositive. Even accepting *Stone* on its terms, the decision does not require sustaining a facial challenge to a law like Arkansas's that allows Ten Commandments displays that are in line with *Stone*.

## II.    While *Lemon* was good law, *Stone* became an outlier.

Even before the Supreme Court overturned *Lemon*, *Stone* did not age well as a judicial precedent. Following *Stone*, the Supreme Court distinguished it again and again, each time giving it less reach. This Court has done much the same.

**A.** The Supreme Court's narrowing of *Stone* began shortly after its issuance. Not even three years later, the Supreme Court rejected an Establishment Clause challenge to a state legislature's "practice of opening each legislative day with a prayer by a chaplain paid by the State." *Marsh v. Chambers*, 463 U.S. 783, 784, 795 (1983). The majority did not once cite *Stone*. Nor did it apply *Lemon*. Both failures drew the ire of the principal dissent. Invoking *Stone*, the dissent found it "self-evident" that the "'purpose' of legislative prayer is preeminently religious rather than secular." *Id.* at 797 & n.4 (Brennan, J., dissenting). As to *Lemon*, the dissent criticized the Court for "mak[ing] no pretense of subjecting Nebraska's practice of legislative prayer" to that

8

"formal 'test[].'"[4] *Id.* at 796. In short, out of the gate, *Stone*'s holding and methodology carried no weight.

Things did not improve for *Stone* after *Marsh*. In *Lynch v. Donnelly*, the Supreme Court held that a municipality could display a "Nativity scene[] in its annual Christmas display." 465 U.S. 668, 670–71, 687 (1984). Whereas *Stone* treated *Lemon* as the end-all-be-all, *Lynch* countered that "we have repeatedly emphasized our unwillingness to be confined to any single test or criterion in this sensitive area." *Id.* at 679. In fact, the Court admitted that in two recent cases (one of which was *Marsh*) it "did not even apply the *Lemon* 'test.'" *Id.* As to *Stone*, *Lynch* understood the case to stand for the slim proposition that the Ten Commandments displays there were problematic because they "were posted purely as a religious admonition" or "were motivated wholly by religious considerations." *See id.* at 679, 680. Taking *Lynch* at its word, *Stone* governs only if the posting of the Ten Commandments is "wholly" or "purely" motivated by religious considerations. Any secular rationale, even in part, suffices to distinguish *Stone*.

The Supreme Court finished its narrowing of *Stone* in a pair of 2005 decisions, each of which considered a Ten Commandments display on public property. In the first decision, the Supreme Court characterized *Stone* as involving extreme facts: It was an "unusual case[]" in which there was either "an apparent sham" by the government or a

---

[4] Later decisions have underscored that *Marsh* declined to apply *Lemon. E.g.*, *Am. Legion*, 588 U.S. at 60 (plurality op.) (noting that in *Marsh* "the Court conspicuously ignored *Lemon* and did not respond to Justice Brennan's argument in dissent that the legislature's practice could not satisfy the *Lemon* test").

Appellate Case: 25-2713     Page: 13     Date Filed: 01/20/2026 Entry ID: 5598742

secular purpose for the statute that was "secondary." *McCreary Cnty. v. Am. Civ. Liberties Union of Ky.*, 545 U.S. 844, 865 (2005). As the Court saw it, *Stone* turned on the "isolated exhibition" of the Ten Commandments "not leav[ing] room even for an argument that secular education explained their being there." *Id.* at 867. *Stone*, the Court clarified, "did not purport to decide the constitutionality of every possible way the Commandments might be set out by the government, and under the Establishment Clause detail is key."[5] *Id.* So under *McCreary County*, *Stone* stands at most for the limited proposition that a standalone Ten Commandments display can raise constitutional concerns. *Am. Civil Liberties Union of Ky. v. Mercer Cnty.*, 432 F.3d 624, 634 (6th Cir. 2005) ("Whatever is left of *Stone* is limited to circumstances involving public displays of the Ten Commandments in isolation."). Indeed, although *McCreary County* considered three different Ten Commandments displays in a courthouse, it cited *Stone* only while considering the one in which the Ten Commandments were displayed alone. 545 U.S. at 868–73.

The second Supreme Court decision from 2005 hemmed in *Stone* even more. As noted above, in *Van Orden*, the Supreme Court rejected an Establishment Clause challenge to the placement of a monument of the Ten Commandments on the grounds of the Texas state Capitol. 545 U.S. at 681 (plurality op.). In so doing, the plurality found

---

[5] The Supreme Court made a similar point about *Stone* nearly 20 years earlier. *Edwards v. Aguillard*, 482 U.S. 578, 593–94 (1987) (observing that *Stone* "did not mean that no use could ever be made of the Ten Commandments, or that the Ten Commandments played an exclusively religious role in the history of Western Civilization").

10

*Lemon* "*not useful* in dealing with the sort of passive monument that Texas has erected on its Capitol grounds." *Id.* at 686 (emphasis added); *see also id.* at 703–04 (Breyer, J., concurring in the judgment) (likewise not relying on *Lemon*). It is hard to imagine a more direct repudiation of *Stone*'s methodology. To *Stone*, *Lemon* was everything. To *Van Orden*, *Lemon* was irrelevant to the constitutionality of a Ten Commandments display on public property.

Rather than apply *Lemon*, the *Van Orden* plurality focused on "the nature of the monument" and "our Nation's history." *Id.* at 686. In undertaking this analysis, the Court pointed out the obvious: "[A]cknowledgements [on public property] of the role played by the Ten Commandments in our Nation's heritage are *common throughout America*." *Id.* at 688 (emphasis added). As evidence, the Court noted that the Ten Commandments are displayed several places in its own building. The Decalogue appears with Moses in the Supreme Court's "own Courtroom"; it "adorn[s]" the gates on both sides of the Courtroom and the "doors leading into the Courtroom"; and "Moses . . . sits on the exterior east facade of the building holding the Ten Commandments tablets." *Id.* And the Supreme Court's building is no exception when compared to other government buildings in our Nation's capital. *Id.* at 689 ("Similar acknowledgements can be seen throughout a visitor's tour of our Nation's Capital."). The Supreme Court later affirmed that "[i]n *Van Orden* and *McCreary*, no Member of the Court thought that these depictions [of the Ten Commandments] are unconstitutional." *Am. Legion*, 588 U.S. at 53.

11

Against this backdrop of Ten Commandments displays "common throughout America," the *Van Orden* plurality turned to *Stone*. And it made short work of the decision. *See Mercer Cnty.*, 432 F.3d at 634 (noting that *Van Orden* "simply dismissed *Stone* as inapplicable"). *Van Orden* did note that *Stone* arose in the "classroom context." 545 U.S. at 690 (plurality op.). But the plurality did not suggest that the Ten Commandments can never be displayed or used in public schools. *Stone* itself refutes such an implication. 449 U.S. at 42. In fact, the *Van Orden* plurality emphasized that nothing "suggest[s] that *Stone* would extend to displays of the Ten Commandments that lack a 'plainly religious,' 'pre-eminent purpose.'" 545 U.S. at 691 n.11 (citation omitted). In other words, the *Van Orden* plurality dismissed *Stone* as a case in which the displays contained not even a hint of a secular purpose. *See id.* That can only be a rare circumstance. After all, in nearly the same breath, the *Van Orden* plurality held that "the Ten Commandments have an undeniable historical meaning" and that "[s]imply having religious content or promoting a message consistent with a religious doctrine does not run afoul of the Establishment Clause." *Id.* at 690.

In the two decades since *McCreary County* and *Van Orden*, the Supreme Court has not cited *Stone* again in a majority decision. *Stone* simply goes unmentioned in the Court's modern Establishment Clause jurisprudence. This is true even when the Court discusses Ten Commandments displays. Most notably, *Stone* did not make an appearance in the governing decision in *American Legion*, despite the Court explaining that the Ten Commandments "have historical significance as one of the foundations of our legal

12

system, and for largely that reason, they are depicted in the marble frieze in our courtroom and in other prominent buildings in our Nation's capital." 558 U.S. at 53.

As this summary shows, *Stone* did not fare well in the Supreme Court even while *Lemon* was good law. *Stone*'s methodology for considering the constitutionality of a Ten Commandments display lost the day in *Van Orden. See* 545 U.S. at 686 (plurality op.); *id.* at 703–04 (Breyer, J., concurring in the judgment). And over time, *Stone* became a one-off decision that applied only in extreme circumstances. In the words of *McCreary County*, *Stone* was an "unusual case[]" in which the "isolated exhibition [of the Ten Commandments] did not leave room even for an argument that secular education explained their being there." 545 U.S. at 865, 867. Thus, even while *Lemon* was on the books, *Stone* became a vanishing precedent.

**B.** This Court has rightly followed the Supreme Court's lead in not extending *Stone*. Two decades ago, the en banc Court refused to apply *Lemon* in rejecting an Establishment Clause challenge to placing a Ten Commandments monument in a Nebraska city park. *ACLU Neb. Found. v. City of Plattsmouth*, 419 F.3d 772, 778 n.8 (8th Cir. 2005) (en banc). "Taking [its] cue from Chief Justice Rehnquist's opinion" and Justice Breyer's concurrence in *Van Orden*, a 10-judge majority focused on our Nation's "heritage," not *Lemon*'s test, to allow the city to display the Ten Commandments monument. *Id.* at 775–77, 778 n.8. It reasoned that "[a]lthough the text of the Ten Commandments has undeniable religious significance, simply having religious content or promoting a message consistent with a religious doctrine does not run afoul of the

13

Establishment Clause." *Id.* at 778 (cleaned up) (citation omitted). The sole mention of *Stone* was to note that the *Van Orden* plurality distinguished it. *Id.* at 776. Indeed, Judge Bye's dissent did not invoke *Stone*.

In 2014, this Court again refused to apply *Lemon*. *Red River Freethinkers v. City of Fargo*, 764 F.3d 948, 949 (8th Cir. 2014). Over Judge Bye's dissent invoking *Lemon*, the Court held that a "passive display of the Ten Commandments on public land is evaluated by the standard in *Van Orden*, which found *Lemon* 'not useful.'" *Id.* at 949 (cleaned up) (internal citations omitted). The Court applied *Van Orden* and this Court's en banc decision in *City of Plattsmouth* to allow the display of a Ten Commandments monument on a city plaza that shows "other symbols, such as the American flag and an 'allseeing eye' within a pyramid." *Id.* at 949–50. Neither the majority nor the dissent cited *Stone*.

Four years later, this Court effectively interred *Lemon*. *See New Doe Child #1 v. United States*, 901 F.3d 1015, 1019–21 (8th Cir. 2018). In that case, the plaintiffs challenged the placement of "In God We Trust" on United States currency. *Id.* at 1018. The Court noted that Establishment Clause jurisprudence "[o]ver the last half century" is convoluted because "the Supreme Court has adopted numerous tests to interpret the Establishment Clause, without committing to any one." *Id.* at 1019. The Court resolved this confusion by applying the history-driven test from *Town of Greece v. Galloway*, 572 U.S. 565 (2014), which was the Supreme Court's "most recent direction." *Id.* at 1019–20. As the Court emphasized, "[i]n *Galloway*, the Supreme Court offered an unequivocal

14

directive: The Establishment Clause *must* be interpreted by reference to historical practices and understandings." *Id.* at 1020 (cleaned up) (citation omitted). And the Court underscored that *Galloway*'s "historical approach is not limited to a particular factual context." *Id.* Although the Court noted that some implications of this doctrinal "shift are not yet clear," *id.* at 1021, *Kennedy* later vindicated this Court's reading of *Galloway.* As *Kennedy* put it (quoting *Galloway*), "[i]n place of *Lemon* and the endorsement test, this Court has instructed that the Establishment Clause must be interpreted by 'reference to historical practices and understandings.'" 597 U.S. at 535 (citation omitted). In short, this Court rightly applied a history-driven inquiry rather than *Lemon.*

## III. Now that *Lemon* has been abrogated, *Stone* should not be applied here.

Although *Stone* had little import before *Lemon* was overruled, *Stone* has no applicability here now that *Lemon* is no more. The Supreme Court left no doubt that *Lemon* has been "abrogated." *Groff*, 600 U.S. at 460 & n.7. Over three years ago, the Court emphasized that it "long ago abandoned *Lemon* and its endorsement test offshoot." *Kennedy*, 597 U.S. at 534. Going forward, *Lemon* is no longer an appropriate test to interpret the Establishment Clause. Indeed, as noted above, that is nothing new in this circuit. *See New Doe Child #1*, 901 F.3d at 1019–21; *Red River Freethinkers*, 764 F.3d at 949–50; *City of Plattsmouth*, 419 F.3d at 778 & n.8.

That *Lemon* has been abrogated raises the question of how to treat a Supreme Court precedent like *Stone* that rests on *Lemon* and nothing else. No doubt, this Court cannot itself overrule a Supreme Court precedent. Some action by the Supreme Court

is required. To quote the well-known rule, "[i]f a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989).

The district court determined that "[t]his case begins and ends with *Stone*." *Stinson*, 798 F. Supp. 3d at 948. That conclusion fails on several levels. Even before *Lemon* was upended, the Supreme Court had hollowed out *Stone*. And in the context of this facial challenge, Arkansas's law is by no means a carbon copy of the law in *Stone*. As noted above, Arkansas's law allows a Ten Commandments display that is situated alongside other documents formative to American history and law. In other words, a Ten Commandments display in Arkansas need not look anything like the "isolated exhibition" considered in *Stone*. *See McCreary Cnty.*, 545 U.S. at 867.

These potential differences in how Arkansas's law could be applied prove up a simple point: *Stone* is not on all fours in the context of this facial challenge. To apply *Stone* to Arkansas's law would require *extending* the decision. The Court should decline to extend *Stone* to these new circumstances. Although a court of appeals cannot declare a Supreme Court decision to be overruled based on its weakened foundations, *Rodriguez de Quijas*, 490 U.S. at 484, this rule does not bind a circuit court to extend a discredited precedent like *Stone*. "[T]he prudent course for an inferior court . . . is to hew closely to the [Supreme] Court's specific, contemporary guidance." *See New Doe Child #1*, 901 F.3d

16

at 1019–20 (citation omitted). In fact, the Supreme Court recently declined to "extend" a decision that "sits uneasily with the [Constitution's] terms, original meaning, and our precedents." *City of Grants Pass v. Johnson*, 603 U.S. 520, 549–50 (2024). As a result, the Court need not ignore *Stone*'s lack of jurisprudential footing. It should treat *Stone*'s status as a poorly reasoned outlier whose methodology has been discredited as a reason not to extend it. Rather than extend *Stone* an inch farther, the Court should apply the test mandated by *Kennedy*.

Although the Court need not decide whether *Stone* remains good law in the context of this facial challenge, the best view is that the Supreme Court has in fact overturned *Stone*. To be sure, the Supreme Court has not said the magic words "*Stone* is overruled." The Supreme Court, however, left no question as to *Lemon*'s demise. As of 2022, the Supreme Court had "long ago abandoned *Lemon*." *Kennedy*, 597 U.S. at 534. And the year after, the Supreme Court confirmed that *Lemon* is "abrogated." *Groff*, 600 U.S. at 460 & n.7.

When the Supreme Court overruled *Lemon*, it rejected *Lemon*'s methodology for interpreting the Establishment Clause. In *Kennedy*, the Supreme Court weighed the lower court's reliance on *Lemon* "and *its progeny*." 597 U.S. at 534 (emphasis added). Of course, *Stone* is part of *Lemon*'s progeny, given that *Stone* is all about *Lemon*. And *Kennedy* swept broadly in rejecting *Lemon*'s application to any Establishment Clause challenge. As *Kennedy* put it, *Lemon* "invited chaos in lower courts, led to differing results in materially identical cases, and created a minefield for legislators." *Id.* (cleaned up) (citation

17

omitted). So *Kennedy* can only be understood as an across-the-board purge of *Lemon* from Establishment Clause jurisprudence. *American Legion* similarly discussed the intractable problems with *Lemon* across "a great array of laws and practices." 588 U.S. at 49 (plurality op.); *accord Galloway*, 572 U.S. at 575–77. These sweeping, categorical holdings about *Lemon*'s shortcomings cannot help but sweep up a case like *Stone* that rests only on *Lemon*. The same is true of *Kennedy*'s unambiguous directive that going forward courts applying the Establishment Clause "*must*" focus on our Nation's history. 597 U.S. at 535–36 (emphasis added). That broad mandate leaves no room for a *Lemon*-driven precedent like *Stone*. *See Firewalker-Fields v. Lee*, 58 F.4th 104, 121 n.5 (4th Cir. 2023) ("[I]t is now clear that *Lemon* and its ilk are not good law.").

## CONCLUSION

The Court should reverse the preliminary injunctions entered below.

Respectfully submitted by,

Russell Coleman
 *Kentucky Attorney General*

<u>*s/ Matthew F. Kuhn*</u>
Matthew F. Kuhn
 *Solicitor General*
John H. Heyburn
 *Principal Deputy Solicitor General*
Caleb B. Childers
 *Assistant Solicitor General*

Office of the Kentucky Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
(502) 696-5300
Matt.Kuhn@ky.gov

*Counsel for Amici States*

# ADDITIONAL COUNSEL

Steve Marshall
Attorney General of Alabama

Stephen J. Cox
Attorney General of Alaska

James Uthmeier
Attorney General of Florida

Raúl R. Labrador
Attorney General of Idaho

Theodore E. Rokita
Attorney General of Indiana

Brenna Bird
Attorney General of Iowa

Kris Kobach
Attorney General of Kansas

Liz Murrill
Attorney General of Louisiana

Lynn Fitch
Attorney General of Mississippi

Catherine Hanaway
Attorney General of Missouri

Michael T. Hilgers
Attorney General of Nebraska

Alan Wilson
Attorney General of South Carolina

Jonathan Skrmetti
Attorney General and Reporter of Tennessee

Ken Paxton
Attorney General of Texas

Derek Brown
Attorney General of Utah

John B. McCuskey
Attorney General of West Virginia

Appellate Case: 25-2713    Page: 25    Date Filed: 01/20/2026 Entry ID: 5598742

## CERTIFICATE OF COMPLIANCE

As required by Federal Rule of Appellate Procedure 32(g), I certify that this brief complies with the type-volume limitation in Fed. R. App. P. 29(a)(5) because it contains 4,700 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Garamond font using Microsoft Word.

I further certify under Local Rule 28(H)(2) that this PDF file was scanned for viruses, and no viruses were found.

*s/ Matthew F. Kuhn*
Matthew F. Kuhn
*Counsel for Amici States*

Appellate Case: 25-2713     Page: 26     Date Filed: 01/20/2026 Entry ID: 5598742

## CERTIFICATE OF SERVICE

I certify that on January 19, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Matthew F. Kuhn*
Matthew F. Kuhn
*Counsel for Amici States*
