# United States Court of Appeals
# For the Eighth Circuit

SAMANTHA STINSON, *et al.*,
*Plaintiffs-Appellees,*

JULEE JAEGER, *et al.*,
*Plaintiffs-Appellees,*

CHRISTINE BENSON, *et al.*,
*Plaintiffs-Appellees,*

v.

FAYETTEVILLE SCHOOL DISTRICT NO. 1, *et al.*,
*Defendants,*

CONWAY SCHOOL DISTRICT, NO. 1,
*Defendant,*

LAKESIDE SCHOOL DISTRICT, NO. 9,
*Defendant,*

STATE OF ARKANSAS,
*Intervenor-Appellant.*

On Appeal from the United States District Court for the Western District of
Arkansas, No. 5:25-cv-05127 (Hon. Timothy L. Brooks)

## Intervenor-Appellant's Reply Brief

<table>
<tr><td>

TIM GRIFFIN
  Arkansas Attorney General

OFFICE OF THE ARKANSAS
ATTORNEY GENERAL

101 West Capitol Avenue
LITTLE ROCK, AR 72201
(501) 682-2007

</td><td>

AUTUMN HAMIT PATTERSON
  Solicitor General

NOAH P. WATSON
  Deputy Solicitor General

LAURA PURVIS
  Assistant Attorney General
autumn.patterson@arkansasag.gov
*Counsel for Defendant-Appellant*

</td></tr>
</table>

# TABLE OF CONTENTS

Table of Contents ........................................................................................................i

Table of Authorities ...............................................................................................iii

Introduction................................................................................................................1

Argument....................................................................................................................2

I. Plaintiffs' Claims Are Not Justiciable...............................................................2

   A. Original-Plaintiffs lack standing ...................................................................2

   B. Later-added parties do not cure the original jurisdictional defect .................6

II. Plaintiffs Failed to Show Likely Success…………….......................................7

   A. Plaintiffs' establishment claim fails ..............................................................7

      1. *Stone* is not binding ................................................................................7

      2. Even if *Stone* remained good law, it cannot be applied here. .....................8

      3. Act 573 has no hallmark of religious establishment................................ 11

      4. Act 573 displays aren't coercive ........................................................... 17

      5. Act 573 doesn't impermissibly favor one religious denomination................................................................................... 19

   B. Plaintiffs' free-exercise claim fails...............................................................22

   C. Plaintiffs failed to show likely success on their facial challenges ..................25

III. Plaintiffs Failed to Show the Irreparable-Harm, Balance-of-Equities, or Public-Interest Factors Justified a Preliminary Injunction ..........................26

IV. The Preliminary Injunctions Exceed the District Court's Authority ..............28

Conclusion....................................................................................................29

Certificate of Compliance ........................................................................ 31

Certificate of Service.................................................................................. 31

**Cases**                                                                **Page(s)**

*ACLU Neb. Found. v. City of Plattsmouth*,
   419 F.3d 772 (8th Cir. 2005) (en banc) ....................................... 1, 20, 26

*ACLU of Oh. v. Capitol Square Rev. & Advisory Bd*,
   243 F.3d 289 (6th Cir. 2001) (en banc)............................................ 13

*Am. Legion v. Am. Humanist Ass'n*,
   588 U.S. 29 (2019) ............................................................ 1, 10, 21

*Bowen v. Roy*,
   476 U.S. 693 (1986)................................................................. 23

*Catholic Charities Bureau, Inc. v. Wis. Lab. & Indus. Rev. Comm'n*,
   605 U.S. 238 (2025) ................................................................ 19

*Citicasters v. McCaskill*,
   89 F.3d 1350 (8th Cir. 1996) ...................................................... 11

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)................................................................ 2, 3

*Ctr. for Biological Diversity v. EPA*,
   937 F.3d 533 (5th Cir. 2019) ........................................................6

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
   108 F.4th 194 (3d Cir. 2024) ...................................................... 27

*Engel v. Vitale*,
   370 U.S. 421 (1962).................................................................8

*Everson v. Bd of Ed of Ewing Twp.*,
   330 U.S. 1 (1947) ................................................................... 16

*Firewalker-Fields v. Lee*,
   58 F.4th 104 (4th Cir. 2023).................................................... 12, 14

*Freedom from Religion Found. Inc v. New Kensington Arnold Sch. Dist.*,
   832 F.3d 469 (3d Cir. 2016)...................................................... 3, 4

*Harley v. Zoesch*,
413 F.3d 866 (8th Cir. 2005) ........................................................ 2, 5

*Hester v. United States*,
586 U.S. 1104 (2019) .....................................................................9

*Hilsenrath v. Sch. Dist. of the Chathams*,
136 F.4th 484 (3d Cir. 2025) .................................................13, 14

*Kennedy v. Bremerton Sch. Dist.*,
597 U.S. 507 (2022) ....................................7, 8, 9, 11, 12, 17, 18, 19

*Lynch v. Donnelly*,
465 U.S. 668 (1984) .....................................................................20

*Mahmoud v. Taylor,*
606 U.S. 522 (2025) ...............................................................4, 24-25

*Marsh v. Chambers*,
463 U.S. 783 (1983) ..................................................................... 16

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) .....................................................................25

*Murthy v. Missouri*,
603 U.S. 43 (2024).........................................................................3

*New Doe Child #1 v. United States*,
901 F.3d 1015 (8th Cir. 2018) ..................... 8, 11, 12, 14, 18, 19, 20, 23

*Park v. Forest Serv. of U.S.*,
205 F.3d 1034 (8th Cir. 2000) .........................................................5

*Perrier-Bilbo v. United States*,
954 F.3d 413 (1st Cir. 2020) ...........................................................23

*Powell v. Noble*,
798 F.3d 690, 702 n.1 (8th Cir. 2015) ..............................................27

*Red River Freethinkers v. City of Fargo*,
679 F.3d 1015 (8th Cir. 2012) ....................................................2, 3

*Rivera v. Bank of Am., N.A.*,
993 F.3d 1046 (8th Cir. 2021)..........................................13

*Roake v. Brumley*,
No. 24-30706, 2026 WL 482555
(5th Cir. Feb. 20, 2026) (en banc) ..............................3, 5, 7, 8, 15, 17, 18, 19, 25

*Roark v. S. Iron R-1 Sch. Dist.*,
573 F.3d 556 (8th Cir. 2009) ..........................................18

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
490 U.S. 477 (1989) ..........................................4, 8

*Sch. Dist. of Abington Twp. v. Schempp*,
374 U.S. 203 (1963)..........................................4, 8

*Sessler v. City of Davenport*,
990 F.3d 1150 (8th Cir. 2021)..........................................27

*Shurtleff v. City of Boston*,
596 U.S. 243 (2022) ..........................................12, 13

*Stone v. Graham*,
449 U.S. 39 (1980) ..........................................6, 8, 10

*Sturgis Motorcycle Rally, Inc. v. Rushmore Photo*,
908 F.3d 313, 341 (8th Cir. 2018) ..........................................14

*Town of Greece v. Galloway*,
572 U.S. 565 (2014)..........................................13, 21

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ..........................................28

*United States v. Iowa*,
126 F.4th 1334 (8th Cir. 2025) ..........................................4

*United States v. Salerno*,
481 U.S. 739 (1987)..........................................25

*Van Orden v. Perry*,
545 U.S. 677 (2005) ..........................................1, 9, 13, 17, 21

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ............................................................ 27

**Constitutional Provisions and Statutes**

Ark. Code Ann. § 1-4-133 ................................................ 1, 10, 11, 18

Ark. Code Ann. § 6-15-503 ............................................................ 23

Ark. Code Ann. § 6-18-2505 ......................................................... 23

Ark. Const. of 1836, Art. 2, § 3 .................................................... 17

**Other Authorities**

Journals of the Continental Congress (Sept. 12, 1782) ........................... 21

Letter from Chief Justice William H. Taft to Henry Ford re:
McGuffey's Readers (Oct. 31, 1924) (2023) .................................. 15

McGuffey's Fourth Eclectic Reader 207–210 (1920 rev. ed.) ................. 17

Michael McConnell, *Establishments and Disestablishment at the
Founding, Part I: Establishment of Religion,*
44 Wm. & Mary L. Rev. 2105 (2003) ................................... 12, 13, 16

Nathan S. Chapman & Michael W. McConnell,
*Agreeing to Disagree* (2023) ............................................ 17

Stephanie H. Barclay et. al., *Original Meaning and the Establishment
Clause: A Corpus Linguistics Analysis*, 61 Ariz. L. Rev. 505 (2019) ............ 18

Vincent Phillip Muñoz, *The Original Meaning of the Establishment
Clause and the Impossibility of Its Incorporation*,
8 U. Pa. J. Const. L. Const. L. 585 (2006) ................................ 17

Act 573 requires schools to post a "historical representation of the Ten Commandments" (if donated) in classrooms. Ark. Code Ann. § 1-4-133(a)(1)(B)(i)-(ii). That does not violate the Establishment Clause or Free Exercise Clause. Contrary to Plaintiffs' arguments, a historical poster does not coerce anyone to do or believe anything, and it's well-established that, while "the text of the Ten Commandments has undeniable religious significance, '[s]imply having religious content or promoting a message consistent with a religious doctrine does not run afoul of the Establishment Clause.'" *ACLU Neb. Found. v. City of Plattsmouth*, 419 F.3d 772, 778 (8th Cir. 2005) (en banc) (citation omitted) (alteration in original). Indeed, "references to and representations of the Ten Commandments on government property are replete throughout our country," *id.* at 777, and rightly so given the Ten Commandments' "historical significance" to "our legal system," *Am. Legion v. Am. Humanist Ass'n,* 588 U.S. 29, 53 (2019), and "America's heritage," *Van Orden v. Perry*, 545 U.S. 677, 689 (2005) (plurality).

Plaintiffs' other arguments are also meritless. Because the district court wrongly granted an overbroad preliminary injunction to Plaintiffs who lacked standing, failed to satisfy preliminary-injunction factors, and evaded the rigorous standard that applies to facial challenges, this Court should reverse.

**ARGUMENT**

## I.     PLAINTIFFS' CLAIMS ARE NOT JUSTICIABLE.

### A. Original-Plaintiffs lack standing.

Original-Plaintiffs lack standing because they never encountered any Act 573 display and did not know what any display and its surrounding context would look like when they filed suit. And based on "the facts as they existed" at the time of this "lawsuit's commencement," *Harley v. Zoesch*, 413 F.3d 866, 872 (8th Cir. 2005) (citation omitted), Plaintiffs failed to show that donations of Act 573 displays were certainly impending, much less that hypothetical, future donated displays would be posted in *their* classrooms and that the particular displays would injure them. Accordingly, Plaintiffs lacked standing both because their alleged future injuries "rest[ed] on speculation about the decisions of independent actors," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013), and because they lacked "direct and unwelcome personal contact" with an Act 573 display before filing suit, *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012).

In response, Plaintiffs attempt to skirt Establishment Clause precedent, invoke inapposite cases, and deflect from their lack of evidence. Nothing they argue demonstrates their standing.

Plaintiffs try to distinguish *Red River*, because it did not involve the "timing"

of an injury, and they ignore other cited cases. Appellees' Br. 16. But *Red River* specifically addressed what constitutes a cognizable injury "to confer standing in so-called 'passive-display' cases" and held that standing "requires only direct and unwelcome personal contact with the alleged establishment." 679 F.3d at 1023 (citation omitted). Original-Plaintiffs had no such unwelcome contact before filing suit, and Plaintiffs cannot cite any case saying hypothetical future contact with a potential future display is sufficient. Indeed, their cited cases confirm an encounter with an unwelcome display is necessary. *See, e.g.*, *Freedom from Religion Found. Inc v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476-80 (3d Cir. 2016) (collecting cases agreeing that standing is established "by showing direct, unwelcome contact" and then holding child-plaintiff lacked standing where "she did not understand the monument" and was unbothered by it until after the suit's commencement).

When Plaintiffs filed suit, they lacked an encounter with an Act 573 display, and no such display even existed, so they had no injury for their Establishment Clause claim. *See Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (explaining standing is assessed on a claim-by-claim basis). And they failed to show that any display in their classrooms was "certainly impending" or that a hypothetical, future display—with unknown context—would injure them to create standing for their free-exercise claim either. *Clapper*, 568 U.S. at 401-02; *see Roake v. Brumley*, No. 24-30706, 2026 WL

482555, at *2 (5th Cir. Feb. 20, 2026) (en banc) (concluding that an "evidentiary gap" about a Ten Commandments display's context "forecloses" free-exercise claims and plaintiffs "suffer no concrete harm from the challenged policy itself, which does not require them to do anything or to refrain from doing anything" (citation omitted)).

Plaintiffs' reliance on inapposite cases doesn't show otherwise. *United States v. Iowa* is a vacated opinion about the United States' standing and, in any event, confirms the "threat of injury must be both real and immediate" for plaintiffs to have standing. 126 F.4th 1334, 1343 (8th Cir. 2025) (citation omitted), *vacated* 2025 WL 1140834 (8th Cir. Apr. 15, 2025). Here, Plaintiffs failed to show either for their hypothetical future injury. And cases where the challenged practice was already occurring are nothing like the circumstances here. *See, e.g.*, *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 206-08 (1963) (describing daily Bible reading and prayers that were occurring). Indeed, in *Mahmoud v. Taylor*, the challenged policy was implemented *before* the plaintiffs filed suit. 606 U.S. 522, 537 (2025); *see id.* at 550-56, 560 (there was no dispute about what books would be read, "clear and undisputed instructions" for teachers, and "little mystery" regarding classroom discussions).

Finally, Plaintiffs insist meager evidence about fundraising postdating the complaint and evidence that *some* displays were donated to *one* Defendant *after* the

complaint was filed (and mere days before the district court issued the preliminary injunction) proves their alleged injuries were certainly impending. But "'standing is determined as of the lawsuit's commencement' and facts are considered 'as they existed at that time.'" Appellant's Br. 18 (quoting *Harley*, 413 F.3d at 872). That means Plaintiffs' "evidence of what happened after the commencement of the suit" cannot prove standing existed when the complaint was filed. *Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000).

Regardless, even evidence of what occurred after the suit's filing—fundraising, a non-defendant's receipt of an unknown number of displays, and *one* Defendant's receipt of a few hundred displays, App. 366-67, R. Doc. 69, at 1-2; App. 375, R. Doc. 70—does not show a certainly impending risk that Defendants would receive enough displays for all *4,000+* classrooms, App. 814 (203:15-18), such that the posting of displays in Plaintiffs' classrooms was likely. Nor does it show Plaintiffs would necessarily be harmed by the displays when Plaintiffs did not know the context of the specific displays or what their teachers would put up around them. *See Roake*, 2026 WL 482555, at *1-2 (explaining the Ten Commandments' "dual character" of having both "religious significance" and "historical significance" "forecloses any categorical rule against their display," and when context of potential future displays is unknown, there's an "evidentiary gap" about whether they will cause concrete

harm).  And parent-Plaintiffs' affidavits, which parrot language from *Stone v. Graham*, and claim future Act 573 displays will cause their children to "venerate" the Ten Commandments do nothing to prove that an encounter with an Act 573 display was certainly impending or that any future displays will necessarily cause harm.  449 U.S. 39, 42 (1980) (per curiam); *see, e.g.*, App. 119, R. Doc. 8-9, at 3; App. 123, R. Doc. 8-10, at 3.  Accordingly, original-Plaintiffs lacked standing, so the district court should have dismissed the suit, not granted a preliminary injunction.

### B.  Later-added parties do not cure the original jurisdictional defect.

Plaintiffs' repeated supplementation of the complaint was improper because it altered potential arguments and this appeal's scope; regardless, the supplementation, doesn't remedy original-Plaintiffs' lack of standing.  Appellant's Br. 17-20.  Plaintiffs (wrongly) contend that the district court could allow supplementation and that original-Plaintiffs had standing.  Appellees' Br. 24-26.  They don't, however, dispute that if original-Plaintiffs lacked standing, supplementation was improper.  Accordingly, they have forfeited any such argument.  *See Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 (5th Cir. 2019) ("Arguments in favor of standing … can be forfeited or waived." (citing, *inter alia*, *Morse v. Ozark County*, 609 F. App'x 359, 361 (8th Cir. 2015)). The Court should therefore reverse and instruct the district court to dismiss the case if it concludes original-Plaintiffs lacked standing.

## II.   PLAINTIFFS FAILED TO SHOW LIKELY SUCCESS.

### A. Plaintiffs' establishment claim fails.

#### 1. Stone *is not binding.*

Attempting to avoid the conclusion that *Stone* isn't binding, Plaintiffs argue this Court must apply *Stone* until the Supreme Court overrules it by name and seek to recast *Stone* as a coercion test.  They fail on both fronts.

Plaintiffs ignore that *Stone* does not simply "appear[]" to rest on rejected reasons—it explicitly relied on *Lemon*, which has been expressly overruled, and *Lemon*, *Stone*, and *Kennedy* are in the same line of cases, not "some other line."  Appellant's Br. 26 (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)).  In other words, "*Stone* doesn't rely on 'reasons' that the Supreme Court has later 'rejected,'" but rather "relies on *precedent* that the Supreme Court has *overturned*."  *Roake*, 2026 WL 482555, at *4-5 (Ho, J., concurring) (emphasis in original).  And "because *Stone* turns entirely on *Lemon*" and "*Lemon* is no longer good law after *Kennedy*," this Court is "not bound by *Stone*."  *Id.  Kennedy* itself is an example of this.  There, the Supreme Court chastised the Ninth Circuit and district court for applying *Lemon* even though it had not yet explicitly overruled *Lemon*.  *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 534 (2022).  In contrast, this Court correctly refused to apply *Lemon* even before the Supreme Court's *Kennedy* decision,

recognizing that it should "hew closely to the [Supreme] Court's specific, contemporary guidance" and look to historical understanding. *New Doe Child #1 v. United States*, 901 F.3d 1015, 1019-20 (8th Cir. 2018) (citation omitted). In short, *Stone*'s exclusive application of *Lemon*'s test means that *Stone* is not binding because to apply *Stone* would be to apply *Lemon*.

Plaintiffs disagree, suggesting that *Stone* is really a coercion case because it cited two school-prayer cases: *Schempp* and *Engel v. Vitale*, 370 U.S. 421 (1962). They are wrong. *Stone* cited *Schempp* to support its conclusion that Kentucky's purpose was not secular under the *Lemon* test despite the "avowed" secular purpose. *Stone*, 449 U.S. at 41. *Stone* also cited *Schempp* and *Engel* to support its conclusion that posting the Ten Commandments suggested endorsement that the "Establishment Clause prohibits," *id.* at 42, but *Lemon's* "endorsement test offshoot" is repudiated in *Kennedy* too, 597 U.S. at 534.[1] *Stone* is therefore *Lemon* all the way down: It "turned on purpose, not coercion" and "focused on legislative motive, not public impact." *Roake*, 2026 WL 482555, at *5 (Ho, J., concurring). As such, *Stone* is not binding.

### 2. *Even if* Stone *remained good law, it cannot be applied here.*

In any event, even if *Stone* were binding, it is still "suspect" and should not be

---

[1] *Stone*'s citation to *Schempp* noting that the Ten Commandments may be in schools in some circumstances doesn't help Plaintiffs either. 449 U.S. at 42.

extended to different circumstances—like those here—because doing so would necessarily involve applying *Lemon*. *See Hester v. United States*, 586 U.S. 1104, 1105 (2019) (Alito, J., concurring in certiorari denial) ("suspect precedents" should not be extended). Plaintiffs respond by minimizing the differences between Kentucky's and Arkansas's laws and exaggerating their similarities.[2] But Plaintiffs cannot dispute differences exist, so applying *Stone* here would be an impermissible extension.

Plaintiffs next claim Arkansas advanced only "a legal argument," not an evidentiary argument, that the district court wrongly concluded Act 573 is sectarian. Appellees' Br. 32. That's false. After explaining precedent has expressly recognized the text in Act 573 is nonsectarian, Arkansas argued that, "[e]ven if the district court could override this Court's precedent, its conclusion is wrong" and recounted evidence that the district court "wrongly refused to consider" and "ignored." Appellant's Br. 28-29. Tellingly, Plaintiffs ignore this evidence too, and their argument that Act 573's version differs from "Protestant, Catholic, and Jewish versions"

---

[2] Plaintiffs' arguments are hard to follow and seemingly contradictory. For example, they insist "the State's selection" of the text "does not distinguish this case from *Stone*," while simultaneously conceding Kentucky did not "prescribe a particular version of the Decalogue" and arguing that *Van Orden* is distinguishable because the text there "was *not* state-selected." Appellees' Br. 31. Plaintiffs also point to differences between the text in Act 573 and the text on Kentucky posters (based on counsel's *ipse dixit* regarding the posters' appearance), which does nothing to advance Plaintiffs' arguments that the cases are identical.

only confirms that the text is nonsectarian.  Appellees' Br. 33 (citation omitted); R. Doc. 57-1, at 35-39.

Turning to precedent that recognized text nearly identical to Act 573's text is "nonsectarian," Appellant's Br. 27, Plaintiffs argue those cases were describing the process of text selection, not concluding the "process was successful."  Appellees' Br. 33.  But even if Plaintiffs' interpretation of those cases were correct, that would still mean Act 573 dictates a text crafted through a nonsectarian process—further demonstrating Act 573 is not proselytization, but rather an acknowledgement of the Ten Commandments' "historical significance."  *Am. Legion*, 588 U.S. at 53; *see* Ark. Code Ann. § 1-4-133(a)(1)(B)(i)-(ii) ("historical representation").

Finally, Plaintiffs argue this case is indistinguishable from *Stone* because Act 573 has a religious purpose.  But this argument demonstrates why applying *Stone* (or even assessing whether a case is distinguishable) requires resurrecting *Lemon*'s legislative-purpose inquiry—notwithstanding Plaintiffs' inaccurate suggestion that neither it nor the district court invoked the purported purpose of legislators to argue Act 573 is unconstitutional.  *See, e.g.*, R. Doc. 9, at 4-5; Add. 26, App. 409, R. Doc. 71, at 26 n.11.  In any event, *Stone*'s conclusion that the purpose of *Kentucky's* law was "plainly religious," Appellees' Br. 35 (quoting *Stone*, 449 U.S. at 41), isn't evidence that *Act 573's* purpose is religious.  And while Plaintiffs attempt to downplay

the Act's repeated requirement that a "historical representation" be posted, Ark. Code Ann. § 1-4-133(a)(1)(B)(i)-(ii), "the best evidence of [statutory] purpose is the statutory text," *Citicasters v. McCaskill*, 89 F.3d 1350, 1354 (8th Cir. 1996) (citation omitted) (alteration in original).  Plaintiffs thus cannot show that *Stone* is on all fours with this case, so it cannot be extended to apply here.

### 3.  *Act 573 has no hallmark of religious establishment.*

Plaintiffs also cannot show that Act 573 has any hallmark of religious establishment that would make it incompatible with historical practices and understandings. Appellant's Br. 31-37.  Plaintiffs never argued (much less showed) Act 573 has any historical hallmark identified in *Kennedy*, nor did the district court conclude that Act 573 resembled any such hallmark.  *Id.* at 33.  Plaintiffs don't dispute that.  Instead, they mischaracterize Arkansas's arguments and cases, seek to sidestep their burden of proof, and fail to rebut evidence showing Act 573 is consistent with historical practices and understandings.

Plaintiffs wrongly suggest that Arkansas argued the historical-hallmark analysis is the exclusive test.  But as explained, courts don't need to do the historical-hallmark analysis in some circumstances, such as when "history shows that the specific practice is permitted."  Appellant's Br. 33 (quoting *New Doe Child*, 901 F.3d at 1021).  Only in cases "where history has not spoken to the 'specific practice at

hand,'" must courts "look to the historical understandings of the Establishment Clause" to determine whether the challenged practice is "impermissibly coercive." *New Doe Child*, 901 F.3d at 1021. And *Kennedy* relied on the historical-hallmark framework (taken from Justice Gorsuch's concurrence in *Shurtleff v. City of Boston*, 596 U.S. 243 (2022)) when determining whether a coach's prayer crossed the line into "impermissible government coercion." 597 U.S. at 537. After reiterating that governments may not coerce church attendance or participation in "a formal religious exercise," *Kennedy* clarified that "coercion along these lines was among the foremost hallmarks of religious establishments the framers sought to prohibit." *Id.* It then cited the *Shurtleff* concurrence, along with Justice Scalia's dissent in *Lee* and a scholarly article discussing the six hallmarks, Michael McConnell, *Establishments and Disestablishment at the Founding, Part I: Establishment of Religion,* 44 Wm. & Mary L. Rev. 2105 (2003), on which the concurrence relied. *Id.* at 537 n.3. That *Kennedy* cited these sources to support its coercion statement demonstrates coercion is not a free-floating test based on concerns about abstract, psychological coercion untethered from history or a standalone hallmark. Rather, the hallmarks largely "reflect forms of coercion," *Shurtleff*, 596 U.S. at 286 (Gorsuch, J., concurring), that "the framers sought to prohibit when they adopted the First Amendment," meaning the hallmarks show what constitutes impermissible coercion, *Kennedy*, 597 U.S. at 537.

Despite Plaintiffs' mischaracterizations of *Hilsenrath v. School District of the Chathams*, that case confirms the analysis mandated by Supreme Court precedent in the school context. 136 F.4th 484 (3d Cir. 2025), *cert denied,* No. 25-256, 2025 WL 3506995 (U.S. Dec. 8, 2025)). As Judge Hardiman explained, plaintiffs must show a law "resembles one of these [six] hallmarks, *id.* at 491, or "even if *Shurtleff* does not cabin the Establishment Clause inquiry," plaintiffs have the "burden to expand its reach," *id* at 491 n.54. Plaintiffs failed to do so here. They haven't shown there's another historical hallmark that must be considered and that Act 573 resembles, nor have they shown that Act 573 resembles one of the identified six hallmarks. Although Plaintiffs now argue Act 573 violates the second hallmark by compelling attendance in the established church, they forfeited that meritless argument by neither raising it below nor developing it here.[3] *See Rivera v. Bank of Am., N.A.*, 993 F.3d 1046, 1051

---

[3] Act 573's requirement that a historical Ten Commandments display must be posted on classroom walls (if donated) doesn't make compelling school attendance analogous to compelling church attendance. *See* McConnell, 44 Wm. & Mary L. Rev. at 2144-45 (explaining second hallmark). If Plaintiffs were correct that posting something with religious significance made a building a church, then countless cases would have come out differently and numerous government buildings would be churches. After all, people must enter government buildings to exercise political rights, including criminal defendants who must enter courtrooms. *See, e.g.*, *Van Orden,* 545 U.S. at 701 (Breyer, J., concurring) (the Ten Commandments are displayed "in dozens of courthouses throughout the Nation"); *Town of Greece v. Galloway,* 572 U.S. 565, 578-79 (2014) (opening prayers at town board meetings); *ACLU of Oh. v. Capitol Square Rev. & Advisory Bd,* 243 F.3d 289, 291-92 (6th Cir. 2001) (en banc)

(8th Cir. 2021) (unpreserved arguments are forfeited); *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.,* 908 F.3d 313, 341 (8th Cir. 2018) (undeveloped arguments are forfeited).

Next, Plaintiffs seek to evade the ample evidence and case law cited in the opening brief showing that Ten Commandments displays are consistent with historical practices. Appellant's Br. 33-35. Plaintiffs attempt this evasion by assuming that the absence of a historical practice of permanent Ten Commandments displays in public-school classrooms means they have satisfied their burden of showing Act 573 is inconsistent with historical practices. Appellees' Br. 46. As explained, that's wrong. *See New Doe Child*, 901 F.3d at 1021. And Plaintiffs also cannot satisfy their affirmative burden by attempting to disprove Arkansas's evidence that having donated Ten Commandments displays on classroom walls is consistent with historical practices and understandings. *See, e.g.*, *Hilsenrath*, 136 F.4th at 491 (plaintiffs must show challenged action "resembles one of these hallmarks of religious establishment"); *Firewalker-Fields v. Lee*, 58 F.4th 104, 122 n.7 (4th Cir. 2023) ("the plaintiff has the burden of proving … facts align with a historically disfavored establishmentarian practice").

---

(motto "With God, All Things Are Possible" appears in government publications and by the statehouse entrance).

In any event, Plaintiffs fail to negate Arkansas's evidence. *See, e.g.*, Appellant's Br. 34-37; R. Doc. 57-1, at 10-32. For example, they argue that the fact the Ten Commandments appeared "in certain reading and spelling lessons" isn't evidence that the Ten Commandments or religious content were taught in public schools. Appellees' Br. 47-48. That argument is unpersuasive to say the least, especially when Plaintiffs' own expert admitted "approximately 30% of the selections" in the 1844 edition of the McGuffey *Readers* were religious, App. 152, R. Doc. 8-12, at 25 n.76— *after* government-run schools became more prevalent, App. 146, R. Doc. 8-12, at 19; *see, e.g.*, *Roake*, 2026 WL 482555, at *7 (Ho, J., concurring) (describing common "textbooks used in early American education" that "featured religious material including the Ten Commandments"); Letter from Chief Justice William H. Taft to Henry Ford re: McGuffey's Readers (Oct. 31, 1924) (explaining he "attended public schools" and "began with the first of McGuffey readers and continued clear through them to the sixth");[4] McGuffey's Fourth Eclectic Reader 207–210 (1920 rev. ed.) (describing a young child's colloquy with a judge about not bearing false witness and the Ten Commandments).[5] And in response to evidence that large percentages of

---

[4] Available at https://www.thehenryford.org/collections/explore/artifact/190328#slide=gs-245863.

[5] Available at https://www.gutenberg.org/files/14880/14880-pdf.pdf.

public schools were reading the Bible or doing "daily devotional exercises" even as late as 1960, Appellant's Br. 34-35, Plaintiffs note that some opposition to Bible readings began in 1840, Appellees' Br. 48, App. 147, R. Doc. 8-12, at 20. But "evidence of opposition" doesn't negate that there's a long history of Bible reading and religious acknowledgements, not only in private schools, but in public ones too. *Cf. Marsh v. Chambers,* 463 U.S. 783, 791 (1983) (disagreeing "that evidence of opposition to a measure weakens the force of the historical argument").

In a last-ditch effort to downplay the evidence that references to the Bible and the Ten Commandments were common in classrooms, Plaintiffs hint this evidence is irrelevant because some States had established churches at the Founding and States "were not formally subject to the First Amendment until 1925." Appellees' Br. 48. But Plaintiffs are wrong that the fact that some States originally had established churches and that the Establishment Clause didn't originally apply to States renders the evidence of historical practices meaningless.[6] For one, this insinuation is unmoored from precedent. For another, it ignores that several States "had no official establishment," McConnell, 44 Wm. & Mary L. Rev. at 2110-111, most States that had established churches disestablished them quickly (from 1776 to 1798), the

---

[6] They also get the year wrong because the Establishment Clause wasn't incorporated until 1947. *See Everson v. Bd of Ed of Ewing Twp.,* 330 U.S. 1, 15 (1947).

last three States with established churches ended theirs in 1818, 1819, and 1833, Vincent Phillip Muñoz, *The Original Meaning of the Establishment Clause and the Impossibility of Its Incorporation,* 8 U. Pa. J. Const. L. 585, 601 n.104 (2006), and several state constitutions had their own version of establishment clauses, *see e.g.,* Ark. Const. of 1836, Art. 2, § 3; *see also* Nathan S. Chapman & Michael W. McConnell, *Agreeing to Disagree* 50 (2023) ("[M]ore than half [of the original States with state constitutions] included prohibitions on religious establishments."). Thus, the ubiquity of references to religion, the Bible, and the Ten Commandments in public-school classrooms for much of our Nation's history is relevant in assessing whether Act 573 is consistent with historical practices.

In short, schools haven't been an exception to "the rich American tradition of religious acknowledgements," *Van Orden*, 545 U.S. at 688-90 (plurality), and they need not be purged of everything that has religious significance, *see Kennedy*, 597 U.S. at 535. Act 573 is "fully consistent with the Constitution." *Roake*, 2026 WL 482555, at *7 (Ho, J., concurring).

### 4. *Act 573 displays aren't coercive.*

Because Plaintiffs cannot show Act 573 resembles a historical hallmark, they argue it's unconstitutionally coercive. But Plaintiffs cannot show Act 573 is coercive either, even ignoring that coercion is not a standalone factor. Appellant's Br. 38-42.

Act 573 requires (where donated) a passive display with religious significance (in addition to historical significance) to be posted, along with the national motto and flags; that's all. Ark. Code Ann. § 1-4-133. It doesn't require Plaintiffs to do anything at all, much less compel them to engage in religious exercise, so school-prayer cases are inapposite.

Yet Plaintiffs rely on those inapposite school-prayer cases and one case from this Court applying *Lemon*, *Roark v. S. Iron R-1 Sch. Dist.*, 573 F.3d 556 (8th Cir. 2009), and mischaracterize *Stone* as a coercion case to argue Act 573 is unconstitutional. Appellees' Br. 37. These arguments fail. As explained, the school-prayer cases are inapposite, Appellant's Br. 39-41, *Lemon* has been overruled, *id.* at 24-25, and even assuming some aspect of *Stone* survived *Lemon*'s demise, "nothing in *Stone* holds—or even suggests—that a passive display of the Ten Commandments is somehow coercive." *Roake*, 2026 WL 482555, at *5 (Ho, J., concurring). And Plaintiffs tellingly cite no historical evidence that passive displays were seen as coercive under an original meaning of the Establishment Clause, even when it comes to children observing them. *See, e.g.*, Stephanie H. Barclay, et. al., *Original Meaning and the Establishment Clause: A Corpus Linguistics Analysis*, 61 Ariz. L. Rev. 505, 509-10, 555–57 (2019).

Plaintiffs pivot to attempting to distinguish *New Doe Child*, claiming "In God

We Trust" does not direct children to honor God, whereas the Ten Commandments do. Appellees' Br. 41. But that ignores possible interpretations of the phrase and that plaintiffs there, including child-plaintiffs, were making the same arguments Plaintiffs make here: "they are continually confronted with and coerced" regarding "a religious idea they oppose." *New Doe Child*, 901 F.3d at 1023. And in *New Doe Child*, this Court nonetheless recognized that the display did not impermissibly coerce anyone. The same is true of passive Act 573 displays. The Establishment Clause is not a "heckler's veto" that requires purging the schools of anything that could be inferred as endorsement of religion. *Kennedy*, 597 U.S. at 534-35. Yet adopting Plaintiffs' coercion theory would require such purging. "After all, if a mere display is coercive, then surely an audible daily recitation of the Pledge of Allegiance every morning for one's entire public school education is, too." *Roake*, 2026 WL 482555, at *5 (Ho, J., concurring). In reality, neither are coercive under the Establishment Clause.

### 5. *Act 573 doesn't impermissibly favor one religious denomination.*

Unable to show Act 573 has any historical hallmark or is coercive, Plaintiffs' fallback is to argue that Act 573 violates a prohibition on denominational preference. But that argument fails too. Plaintiffs rely on *Catholic Charities Bureau, Inc. v. Wisconsin Labor & Industry Review Comm'n,* 605 U.S. 238, 250 (2025), but that case held

only that a law violated the Establishment Clause by excluding a Catholic charity from a tax exemption "based on theological choices." It follows precedent recognizing that the government cannot discriminate against a denomination by denying it a government benefit or imposing additional regulations. That precedent is inapplicable to this case challenging a law that requires schools to post donated historical representations of the Ten Commandments—something with historical significance. *See City of Plattsmouth*, 419 F.3d at 778.

Government displays with religious significance, like Act 573 displays, do not impermissibly favor a particular religion or religion over non-religion. *See, e.g., Lynch v. Donnelly,* 465 U.S. 668, 687 n.13 (1984) (rejecting argument that a city's ownership and display of a creche "as explicitly discriminatory in the sense contemplated in *Larson*"); *id.* at 678 (recognizing the Court has refused to "mechanically invalidat[e] all governmental conduct or statutes that confer benefits or give special recognition to religion in general or to one faith"). If it were otherwise, countless cases would have come out differently. *See, e.g.*, *New Doe Child*, 901 F.3d at 1022 (rejecting argument that having "In God We Trust" on currency "privileges monotheism"); *City of Plattsmouth*, 419 F.3d at 777-78 (collecting cases where government recognition of religious content was upheld).

Plaintiffs are also wrong that Act 573 shows a denominational preference. To

the contrary, Act 573 specifically dictates a text that doesn't perfectly align with any denomination or faith tradition, further highlighting Act 573's purpose to recognize the historical significance of the Ten Commandments, not to favor one specific religion or denomination. *See* R. Doc. 57-1, at 35-39; Appellant Br. 27-29. In any event, Act 573 would still be constitutional even if it did mandate a Protestant version of the text. "'[A]n insistence on nonsectarian' religious speech is inconsistent with our Nation's history and traditions." *Am. Legion,* 588 U.S. at 76-77 (2019) (Thomas, J., concurring) (quoting *Galloway,* 572 U.S. at 578); *see Van Orden*, 545 U.S. at 692 (Scalia, J., concurring) ("[T]here is nothing unconstitutional in a State's favoring religion generally, honoring God through public prayer and acknowledgment, or, in a nonproselytizing manner, venerating the Ten Commandments."); Journals of the Continental Congress 574 (Sept. 12, 1782), https://www.loc.gov/resource/llscdam.lljc023/?st=pdf&pdfPage=116 (Congress recommending a particular "edition of the Bible to the inhabitants of the United States"). And a legislative prayer or government display does not "violate[] the Establishment Clause any time it is given in the name of a figure deified by only one faith or creed." *Galloway,* 572 U.S. at 580-81 (citing *Van Orden,* 545 U.S. at 688). Accordingly, Plaintiffs failed to show likelihood of success under their theory that Act 573 is an impermissible denominational preference.

**B. Plaintiffs' free-exercise claim fails.**

Plaintiffs have also failed to show likely success on their free-exercise claims. As explained, Act 573 is a neutral, generally applicable law and doesn't substantially interfere with Plaintiffs' ability to direct student-Plaintiffs' religious upbringing. Appellant's Br. 42-52.

In response, Plaintiffs insist the law is not neutral because it favors religion (specifically, Protestantism). But as explained, that is wrong, *see supra* 19-21, including because the text is non-sectarian, Appellant's Br. 27-29, and in any event, Plaintiffs' have no answer to cases demonstrating that a law or display that "acknowledges religion or incorporates scripture does not negate its neutral and generally applicable nature," Appellant's Br. 46-47. Nor do cherrypicked legislators' statements prove Act 573 has a discriminatory purpose. Instead, the legislative history corroborates what the text shows: Act 573's purpose is to acknowledge the historical significance of the Ten Commandments. Appellant's Br. 29-30. And a parent's speculation about how her student may feel in response to a hypothetical, future Act 573 display does not show a lack of neutrality or coercion. Even when there's no "reason to doubt the sincerity" of beliefs, a religious acknowledgement or display does not place "a substantial burden" on the exercise of religion because the government is not forcing "a person to act, or refrain from acting, in violation of

22

his or her religious beliefs." *New Doe Child*, 901 F.3d at 1026; *see Perrier-Bilbo v. United States*, 954 F.3d 413, 430 (1st Cir. 2020) ("Mere exposure to different religious ideas … does not prevent [plaintiff] from ascribing to or pursuing her own beliefs."). Indeed, Plaintiffs do not dispute "[t]hat 'students are not forced to read [the text on the displays] or penalized for not reading it.'" Appellees' Br. 59. Act 573 thus does not substantially burden free-exercise rights.

Nor does the existence of general public-school attendance requirements mean that a poster on a wall is coercive or a substantial burden.[7] Indeed, embracing Plaintiffs' arguments would be unworkable, allowing parents to micromanage public schools to conform to their particular beliefs. Under Plaintiffs' theory, for example, to stop schools from "coercing" students, Christian parents fasting from meat on Fridays during Lent could insist the school cafeteria not serve meat on Fridays, or Muslim parents could insist the school stops serving pork. That's not what the Free Exercise Clause requires. *See Bowen v. Roy*, 476 U.S. 693, 699 (1986).

Contrary to Plaintiffs' arguments, *Mahmoud* doesn't change this conclusion because *Mahmoud* doesn't apply here where parents are not seeking to opt-out of a

---

[7] Arkansas parents and legal guardians may also homeschool their children, and parents of students participating in the Educational Freedom Account Program may direct funds to a private school of their choice. *See, e.g.*, Ark. Code Ann. §§ 6-15-503, 6-18-2505.

particular curricular requirement but rather seek removal of classroom posters with historical significance in every single classroom—including classrooms their children will never enter. Appellant's Br. 48-50. Plaintiffs attempt to sidestep *Mahmoud*'s inapplicability, alleging Arkansas overlooks "*Mahmoud's* clear application to laws whereby the government 'requires [parents] to submit their children to *instruction* that poses 'a very real threat of undermining' the religious beliefs and practices that parents wish to instill.'" Appellees' Br. 60 (emphasis added). But Plaintiffs wrongly treat a passive display as equivalent to curriculum or instruction; it is not. Nor can Plaintiffs cite a single case showing otherwise.

Although Plaintiffs insist *Mahmoud* was about "the introduction of just five storybooks" that would generally be on a bookshelf "out of sight," they tellingly have no pincite for that characterization. *Id.* at 59-60. That's because *Mahmoud* was about classroom "instruction" that included "explicitly contradict[ing]" parents' religious views and "reprimand[ing] any children who disagree" with the viewpoint of the "'LGBTQ+-inclusive' instruction." 606 U.S. at 555-56. In contrast, Act 573 mandates historical displays, not *any* classroom instruction—much less instruction that includes reprimanding children for their religious beliefs. Concluding that Plaintiffs are right on their free-exercise claim would invent a new right "to micromanage" public schools down to what posters appear on classroom walls. *Id.* at

24

568.  For example, parents could demand not only that their students be allowed to opt out of the Pledge of Allegiance, but also to insist that the recitations of the Pledge cease.  *See Roake*, 2026 WL 482555, at *5 (Ho, J., concurring).  Plaintiffs' free-exercise arguments are unsupported by history, precedent, and common sense.

### C. Plaintiffs failed to show likely success on their facial challenges.

While Plaintiffs failed to show likely success under any standard, they certainly failed to do so under the "rigorous standard" for facial challenges.  *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). Plaintiffs cannot dispute that schools can receive different Act 573-compliant displays, nor that the context surrounding the displays can vary significantly.  Yet they insist the inevitable variation doesn't matter because the Act stipulates some display requirements, which they allege is sufficient to conclude the Act is facially unconstitutional.  Appellees' Br. 53.  But Plaintiffs cannot avoid their burden by declaring "the challenged action would be unlawful on any conceivable set of facts."  *Cf. Roake*, 2026 WL 482555, at *3 (discussing ripeness).

Indeed, Plaintiffs struggle to find support for their argument given the Supreme Court's recent admonishments, so they again turn to *Stone*.  But even assuming *Stone* is binding, *but see supra* 7-8, it predates *United States v. Salerno*, 481 U.S. 739 (1987), and later cases specifying what's required to prevail on a facial

challenge, including in the First Amendment context. *Stone* thus did not address what was required in a facial challenge and is no help to Plaintiffs.

Plaintiffs accordingly resort to deflection. They criticize Arkansas's position as "weak[]" because Arkansas included a photograph of a display in Texas, rather than in Arkansas. Appellees' Br. 54. But that ignores that it's Plaintiffs' burden to prove there's a lopsided ratio of unconstitutional applications to constitutional ones. And it ignores that Plaintiffs brought a *pre-enforcement* challenge and that Arkansas also cited a poster that Arkansans planned to donate that varies from posters donated to Fayetteville schools after the suit was filed. *Compare* App. 268; R. Doc. 58-1, at 91, *with* App. 378; R. Doc. 70, at 4. Religious displays and even instruction with religious content can be constitutionally permissible, *see, e.g.*, *City of Plattsmouth*, 419 F.3d at 778, Appellant's Br. 33-37, *supra* 11-17, so the district court erred by refusing to apply the daunting standard for facial challenges when assessing likelihood of success.

## III. PLAINTIFFS FAILED TO SHOW THE IRREPARABLE-HARM, BALANCE-OF-EQUITIES, OR PUBLIC-INTEREST FACTORS JUSTIFIED INJUNCTIVE RELIEF.

The district court also erred by collapsing the preliminary-injunction analysis into one prong—likelihood of success—and "presum[ing]" Plaintiffs satisfied the other factors. Add. 33, App. 416; R. Doc. 71, at 33. As explained, this was reversible error. Appellant's Br. 56-57.

Plaintiffs don't dispute this truncated preliminary-injunction analysis occurred; they simply disagree it was error. They're wrong. The Supreme Court mandated four factors, emphasized "the importance of assessing the balance of equities and the public interest," and criticized a district court for addressing those "considerations in only a cursory fashion." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 26 (2008). It's wrong to "collapse[] the four factors into one," and "success on the first factor is not enough." *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024), *cert. denied sub nom., Gray v. Jennings*, 145 S. Ct. 1049 (2025).

Nevertheless, Plaintiffs insist that First Amendment harms always constitute irreparable injury based on cases where plaintiffs were already suffering the alleged harm. Appellees' Br. 64-65. But even assuming Act 573 violates the First Amendment, "original-Plaintiffs failed to show 'certain and great' harm 'of such imminence' to establish a 'clear and present need for equitable relief.'" Appellant's Br. 56 (quoting *Powell v. Noble*, 798 F.3d 690, 702 n.1 (8th Cir. 2015)). Without "imminent" harm, an injunction is unwarranted even if the potential harm is a constitutional harm. *Sessler v. City of Davenport*, 990 F.3d 1150, 1156 (8th Cir. 2021).

Finally, Plaintiffs dispute the well-established principle that States suffer an "irreparable injury" "any time" they are enjoined "from effectuating statutes

enacted by representatives of [their] people," *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025), suggesting this principle doesn't apply when a statute is unconstitutional. But this irreparable harm occurs "any time" democratically enacted statutes cannot be implemented, *id.*; it doesn't evaporate with the district court's (incorrect) determination that Plaintiffs would likely prevail on constitutional claims. The district court thus erred by granting extraordinary injunctive relief when Plaintiffs didn't satisfy the remaining preliminary-injunction factors.

## IV. THE PRELIMINARY INJUNCTIONS EXCEED THE DISTRICT COURT'S AUTHORITY.

Because the district court lacked authority to issue injunctions that are "more burdensome" than necessary and go well beyond "offer[ing] complete relief *to the plaintiffs before the court*," this Court should, at the very least, narrow the injunctions. *CASA*, 606 U.S. at 852 (emphasis in original) (citation omitted). Plaintiffs don't dispute that they offered no evidence child-Plaintiffs themselves ever go into classrooms other than their own, much less that they enter classrooms in *other* schools. Accordingly, there's no reason the injunction needs to extend to *thousands* of classrooms when Plaintiffs will have complete relief by simply prohibiting enforcement of Act 573 in, at most, *dozens* of classrooms and libraries.

Indeed, Plaintiffs do not explain why it would be unworkable to simply prohibit Act 573 posters in Plaintiffs' classrooms and libraries. They instead attack a

strawman, pretending Arkansas asked for an injunction that would require school districts to remove and then re-hang posters based on Plaintiffs' daily movements. Appellees' Br. 67. Plaintiffs' mischaracterization of Arkansas's arguments betrays their inability to rebut them. While Plaintiffs and the district court may object to Act 573 and wish to prevent its enforcement district-wide, if not state-wide,[8] the over-broad injunctions exceed equitable limits and must be narrowed if not reversed.

## Conclusion

The Court should reverse.

---

[8] *See, e.g.*, R. Doc. 79, at 1-2 (complaining non-defendant school districts didn't comply with district court's order); R. Doc. 86, at 2 (explaining that its order was also "[f]or the benefit of the 233 districts that were not specifically enjoined" and that it assumed other districts would comply with it).

Respectfully submitted,

TIM GRIFFIN
Arkansas Attorney General

AUTUMN HAMIT PATTERSON
Solicitor General

NOAH P. WATSON
Deputy Solicitor General

LAURA PURVIS
Assistant Attorney General

OFFICE OF THE ARKANSAS
 ATTORNEY GENERAL
101 West Capitol Avenue
Little Rock, Arkansas 72201
(501) 682-2007
autumn.patterson@arkansasag.gov
*Counsel for Intervenor-Appellant*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,498 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I also certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in 14-point Equity A, using Microsoft Word.

I further certify that this PDF file was scanned for viruses, and no viruses were found on the file.

*/s/Autumn Hamit Patterson*
Autumn Hamit Patterson

## CERTIFICATE OF SERVICE

I certify that on March 12, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

*/s/Autumn Hamit Patterson*
Autumn Hamit Patterson